UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RJB WHOLESALE, INC, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY CASTLEBERRY, <br><br> Defendant. | CASE NO. C16-1829-MJP <br><br> ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO STRIKE |

THIS MATTER comes before the Court on Defendant Jeffrey Castleberry's Motion for Summary Judgment. (Dkt. No. 48.) Having reviewed the Motion, the Response (Dkt. No. 58), the Reply (Dkt. No. 68), the Surreply and Motion to Strike (Dkt. No. 81), and all related papers, the Court GRANTS the Motion for Summary Judgment and DENIES the Motion to Strike.

**Background**

Between 2010 and 2016, Defendant Jeffrey Castleberry worked as a sales representative for Plaintiff RJB Wholesale, Inc. ("RJB"). (Dkt. No. 48 at 2; Dkt. No. 58 at 2.) RJB is a distributor of industrial products including pipes, fire-supply equipment, and well-drilling

equipment. (Dkt. No. 48 at 2.) RJB purchases products from manufacturers and distributors and then re-sells them to other distributors and end users. (Id.) During Mr. Castleberry's employment with RJB, the company purchased from and sold products to North American Pipe & Steel ("NAPSteel"). (Id.)

RJB did not require Mr. Castleberry to sign a non-compete, non-disclosure, non-solicitation, or any related agreement at any time. (Dkt. No. 48 at 2.) On August 27, 2016, after several years of increasing frustration with the company, Mr. Castleberry resigned, and on September 6, 2016, he accepted a position with NAPSteel. (Id. at 5-6; Dkt. No. 58 at 9.) Since then, Mr. Castleberry concedes that he has worked with "many of the same customers with whom [he] conducted business while at RJB," but claims he has not provided NAPSteel with RJB's customer or pricing information. (Dkt. No. 52 at ¶ 22.)

I. **Mr. Castleberry's Alleged Misappropriation**

RJB alleges that Mr. Castleberry misappropriated (1) its customer list and (2) a company cellphone that was programmed with customer contact information. (Dkt. No. 1 at ¶¶ 3.3-3.16; Dkt. No. 58 at 4-5.)

a. **The RJB Customer List**

The customer list (the "RJB Customer List") is a spreadsheet consisting of the names, locations, telephone numbers, and the dates of most recent sales for 1,564 of RJB's customers. (Dkt. No. 58 at 7-8; Dkt. No. 56, Ex. 1.) It appears that the list was last updated in 2011 and includes accounts with last sales dates going back to the early 1990s. (Dkt. No. 56, Ex.1.) RJB claims that its Customer List includes the "vast majority" of its current customers and was "developed and maintained over the 46 year history of the business." (Dkt. No. 58 at 8.) RJB

claims that this information "not readily available through other sources" and "not generally known in the industry." (Id.)

Mr. Castleberry concedes that he emailed himself a copy of the RJB Customer List on August 18, 2018, but claims he did so in order to track sales and commissions he believed he was owed, but which had been diverted to another sales representative. (Dkt. No. 48 at 4.) Mr. Castleberry claims he never printed, forwarded, or otherwise provided the RJB Customer List to anyone else, or used it for any purpose. (Id.)

### b. The Cellphone

RJB provided Mr. Castleberry with a Verizon Wireless cellphone that he used to store contacts, contact customers, and send emails. (Dkt. No. 58 at 5.) Mr. Castleberry concedes that he did not return the cellphone after he resigned, but claims that it contained his personal contacts and data and was programmed with the phone number he had used for nearly a decade before his employment with RLB. (Dkt. No. 48 at 5-6.) Accordingly, Mr. Castleberry claims he had the information on the phone transferred to a new phone. (Id.) After the transfer was complete, Mr. Castleberry claims he discarded the cellphone. (Id.)

## II. RJB's Lost Sales

RJB filed this lawsuit on November 28, 2016. (Dkt. No. 1.) RJB claimed that Mr. Castleberry improperly contacted customers "that he became aware of during his RJB employment" and "us[ed] RJB's trade secrets to solicit sales for NAPSteel." (Id. at ¶ 3.29.) Despite having more than a year to do so, RJB has yet to identify any non-speculative damages resulting from Mr. Castleberry's alleged misappropriation. (See Dkt. No. 58 at 14-15.) Instead, RJB points to 16 customers that Mr. Castleberry allegedly contacted after he was hired by NAPSteel, who thereafter "produced sales and revenues for NAPSteel" (the "Solicited

Accounts") and 84 customer accounts for which it claims to have lost revenue since August 2016 (the "Lost Revenue Accounts"). (Id. at 15; Dkt. No. 56 at ¶¶ 13, 19, Exs. I, K; see also Dkt. No. 48 at 12-13.) Notwithstanding Mr. Castleberry's alleged misappropriation, RJB conceded at deposition that its revenues have increased overall since his resignation. (Dkt. No. 48 at 12.)

**Discussion**

RJB brings claims against Mr. Castleberry for (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.; (2) violation of the Economic Espionage Act ("EEA"), 18 U.S.C. § 1831, et seq.; (3) misappropriation in violation of the Uniform Trade Secrets Act ("UTSA"), RCW 19.108.010, et seq.; (4) breach of contract; (5) breach of fiduciary duties; (6) conversion; (7) tortious interference, and (8) unjust enrichment. Mr. Castleberry moves for summary judgment as to each.

**I.  Motion for Summary Judgment**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

### a. Damages

RJB claims that Mr. Castleberry's alleged misappropriation caused it "significant damage" and that it "lost customers and sales" as a result of his conduct. (Dkt. No. 58 at 14.) However, its claims appear to be purely speculative and are unsupported by the evidence in the record.

As an initial matter, while RJB claims that Mr. Castleberry has relied upon its "sales histories and product preferences" and "confidential pricing information" to solicit sales for NAPSteel (Dkt. No. 1 at ¶¶ 3.22-23), the RJB Customer List manifestly does not include this information. (See Dkt. No. 56, Ex. 1.) RJB has failed to explain how the names and locations of its customers are "not generally known in the industry" or how they have "substantial economic value," particularly given that the RJB Customer List had not been updated for nearly five years prior to the alleged misappropriation. (Dkt. No. 58 at 8; Dkt. No. 59 at ¶¶ 13-14.) In fact, of the 16 Solicited Accounts, 14 were preexisting customers of NAPSteel before August 2016. (Dkt. No. 68 at 3; see also Dkt. No. 70.) The two that were not preexisting customers were not listed in the RJB Customer List that Mr. Castleberry allegedly misappropriated. (Id.) Similarly, of the 84 Lost Revenue Accounts, 49 have never been customers of NAPSteel and 32 were customers of NAPSteel before August 2016. (Dkt. No. 48 at 13; Dkt. No. 51 at ¶¶ 8-10.) Of the three who were not preexisting customers, only one was listed on the RJB Customer List. (Id.)

While the number of customers Mr. Castleberry allegedly misappropriated is immaterial, the amount of damages caused by the alleged misappropriation is not. Critically, RJB has neither specified the amount of revenues it claims to have lost nor demonstrated that it would have earned those revenues but for Mr. Castleberry's alleged misappropriation. (Dkt. No. 68 at 3.) To the contrary, there are numerous reasons that the company's sales might have been

underperforming: For example, RJB's CEO acknowledged that he had gotten into an altercation with a distributor at a trade show (Dkt. No. 47, Ex. 4 at 190:16-192:16); that one of his sales managers had gotten "belligerently drunk" and acted inappropriately to an industry representative at a separate trade show (Dkt. No. 47, Ex. 4 at 185:11-187:12); and that he repeatedly sent inappropriate emails to Mr. Castleberry, other employees of RJB, and an employee of NAPSteel (Dkt. No. 47, Ex. 5 at 5:10-8:10, 10:5-12:14).

Instead of attempting to provide even an estimate of its damages, RJB claims "it is undisputed that Castleberry threw the Verizon cell phone in the garbage and that RJB has incurred over $5,000 as defined by the CFAA between the value of the cell phone, lost sales, and investigative costs." (Dkt. No. 58 at 15.) This is insufficient as a matter of law. First, investigative costs are not compensable as damages in a CFAA action. See, e.g., Doyle v. Taylor, 2010 WL 2163521, at *3 (E.D. Wash. May 24, 2010) (holding that if they were, "a compensable loss would accrue every time any person accessed another person's computer . . . without authorization and copied information stored there, because a forensic expert would have to be retained to examine every computer onto which such information might have been copied . . ."). Second, RJB has not cited any authority—and the Court is aware of none—that would entitle it to recover the value of the cellphone in an action under the CFAA, EEA, or UTSA. And even were this not the case, RJB's conversion claim does not allege that Mr. Castleberry converted its property when he disposed of the cellphone, but instead focuses on his use of customer information. (See Dkt. No. 1 at ¶ 9.2.)

Because RJB has not proved that it was damaged by Mr. Castleberry's alleged misappropriation, it has failed to establish an element essential to each of its causes of action.

The Court need not reach the remaining rationales for dismissal, as this failure is fatal to its entire case.

Therefore, the Court GRANTS the Motion for Summary Judgment.

**II.  Motion to Strike**

RJB moves in its surreply to strike portions of Mr. Castleberry's Reply and the declarations submitted in support thereof. (Dkt. No. 81.) The surreply is far from clear. Nevertheless, to the extent that it appears to ask the Court to strike materials concerning (1) NAPSteel's customer contacts and sales predating August 2016 and (2) RJB's compliance or noncompliance with the Court's discovery orders, the Court declines to do so. As to the Declaration of David Fairley (Dkt. No. 70)—in which Mr. Fairley, the Controller of NAPSteel, declares under oath that NAPSteel first began selling to certain of the Solicited Accounts before August 2016—RJB has not identified a valid basis for striking this material. As to the remaining materials—which include attorney declarations and other non-evidentiary filings—the Court does not rely on them in reaching its conclusion. Finally, even if the Court were to strike all of the materials identified in RJB's surreply, RJB nevertheless has failed to prove damages.

Therefore, the Court DENIES the Motion to Strike.

## Conclusion

Because RJB has not proved that it was damaged by Mr. Castleberry's conduct, it has failed to establish an essential element of each of its causes of action. Therefore, the Court GRANTS Mr. Castleberry's Motion for Summary Judgment in its entirety. See Celotex, 477 U.S. at 322 (summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The Court DENIES RJB's Motion to Strike.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 9, 2018.

Marsha J. Pechman
United States District Judge