UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RJB WHOLESALE, INC,<br><br>                Plaintiff,<br><br>     v.<br><br>JEFFREY CASTLEBERRY,<br><br>                Defendant. | CASE NO. C16-1829-MJP<br><br>ORDER GRANTING MOTION FOR ATTORNEY FEES |

THIS MATTER comes before the Court on Defendant Jeffrey Castleberry's Motion for Attorney Fees. (Dkt. No. 88.) Having reviewed the Motion, the Response (Dkt. No. 104), the Reply (Dkt. No. 98), and the related record, the Court GRANTS the Motion.

**Background**

Plaintiff RJB Wholesale, Inc. ("RJB") brought suit for misappropriation of trade secrets under the Washington Uniform Trade Secrets Act ("UTSA"), RCW 19.108.010, et seq.; the Economic Espionage Act ("EEA"), 18 U.S.C. § 1831, et seq., and for various other claims. (Dkt. No. 1.) In August 2018, the Court granted summary judgment in Mr. Castleberry's favor as to

all claims. (Dkt. No. 85.) Mr. Castleberry now seeks an award of $293,711.00 in attorney's fees and $25,051.20 in costs.[1] (Dkt. No. 88 at 13, Dkt. No. 98 at 6.)

**Discussion**

**A. Legal Standard**

Under the UTSA and EEA, a prevailing party may recover attorney's fees "[i]f a claim of misappropriation is made in bad faith . . ." RCW 19.108.040; see also 18 U.S.C. § 1836(b)(3)(D). It appears that neither the legislature nor the courts have defined "bad faith" in this context. However, Washington's UTSA, including its provision concerning attorney's fees, closely tracks the California Uniform Trade Secrets Act (compare RCW 19.108.040, Cal. Civ. Code §§ 3426.4) and the Court finds that the definition of "bad faith" set forth in Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1262 (2002) is persuasive. See also Fluke Corp. v. Milwaukee Elec. Tool Corp., 162 Wn. App. 1040, 2011 WL 2707205, at *12 (2011) (discussing California Court of Appeals' interpretation of "bad faith" in California Uniform Trade Secrets Act). Under that definition, "bad faith" requires (1) "objective speciousness of the claim" and (2) "subjective bad faith in bringing or maintaining the action." Gemini, 95 Cal. App. 4th at 1262.

**B. Motion for Attorney's Fees**

Mr. Castleberry contends that RJB's claim was (1) "objectively specious" because RJB filed suit without proof of either damages or a protectable trade secret and (2) maintained the action for the improper purpose of preventing legitimate competition. (Dkt. No. 88 at 8-12.)

---

[1] Mr. Castleberry's counsel initially sought $313,711.00 in fees and $28,151.20 in costs. (Dkt. No. 88 at 13.) However, counsel notes that $20,000 in fees was incurred in responding subpoenas served on NAPSteel, and $2,100 in costs has since been refunded. (Dkt. No. 99 at ¶¶ 2, 4.)

RJB responds that, due to the "late production of key evidence by Castleberry and NAPSteel," it "could not have had full facts regarding Castleberry's use of trade secrets . . . and the corresponding losses of revenues sustained by RJB, until it obtained Castleberry's deposition, the withheld cellphone contacts, NAPSteel's records, and the deposition of NAPSteel witnesses." (Dkt. No. 104 at 10.)

The Court finds that RJB's claims were objectively specious. While RJB contends that its misappropriation claim was supported by "compelling" and "substantial evidence" (Dkt. No. 104 at 11), the Court already made evidentiary findings to the contrary and concluded that the claim lacked merit. (See Dkt. Nos. 85, 106.) RJB has *never* been able to specify the amount of revenues it claims to have lost or to demonstrate that it would have earned those revenues but for Mr. Castleberry's alleged misappropriation. Further, RJB has *never* been able to identify a protectable trade secret (i.e., to explain how the names and locations of its customers were "not generally known in the industry" or were of "substantial economic value," particularly where the list had not been updated for nearly five years prior to the alleged misappropriation). These are precisely the conditions under which courts have found claims objectively specious. See, e.g., FLIR Sys., Inc. v. Parrish, 174 Cal. App. 4th 1270, 1276 (2009) (claim was objectively specious where there was no evidence of "'actual damages,' misappropriation, or threatened misappropriation of trade secrets . . ."); CRST Van Expedited, Inc. v. Werner Enter., Inc., 479 F.3d 1099, 1112 (9th Cir. 2007) ("While there is no proof that [plaintiff's] purported trade secrets are worthless, there is also no proof in the record that they are worth anything. This supports the conclusion that [plaintiff's] claim was objectively specious.").

The Court also finds that RJB's claims were brought and maintained in bad faith. "'Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its

claim for trade secret misappropriation has no merit.'  A court may determine a plaintiff's subjective misconduct by examining evidence of the plaintiff's knowledge during certain points in the litigation and may also infer it from the speciousness of a plaintiff's trade secret claim." JLM Formation, Inc. v. Form+Pac, 2004 WL 1858132, at *2 (N.D. Cal. Aug. 19, 2004) (citation omitted).  First, it should have been apparent to RJB from the outset that the five-year-old customer list and cellphone contacts lacked independent economic value.  Nevertheless, RJB contends that it could not have uncovered facts concerning the alleged misappropriation "until it obtained Castleberry's deposition, the withheld cellphone contacts, NAPSteel's records, and the deposition of NAPSteel witnesses," which occurred more than a year and a half into the litigation. (Dkt. No. 104 at 10.)  At a minimum, RJB acted recklessly in bringing and maintaining this case in the absence of such evidence, and its "sue first, ask questions later" approach cannot be condoned.  Second, Mr. Beck's emails to Mr. Castleberry give rise to an inference of personal animus, and suggest that RJB's claim against Mr. Castleberry was no more than an attempt to enforce a non-existent non-compete agreement, brought and maintained for improper purposes.  (See, e.g., Dkt. No. 52, Exs. D, J.)

Therefore, the Court concludes that RJB's claim of misappropriation was made in bad faith, such that Mr. Castleberry is entitled to recover his attorney's fees.  While RJB contends that the requested fees include "work done for NAPSteel, work that was administrative in nature, work that was double billed, and work where the time entry is unclear as to whom the work was done and whether the work should be billed" and must therefore be reduced "by a minimum of $72,646.00" (Dkt. No. 104 at 12-13), the Court has reviewed the invoices and other documents submitted in support of the fee petition, and finds that the requested reduction is not warranted. First, work performed for NAPSteel involved a common core of facts with work performed for

Mr. Castleberry. With the exception of time spent responding to subpoenas served solely on NAPSteel, this time is recoverable. Second, RJB's concerns about "administrative time" and "unclear" billing entries (Dkt. No. 96 at ¶¶ 8, 9; Ex. A) appear to be unfounded. Each of the identified entries appears to include time reasonably spent on the case. Further, Mr. Castleberry's counsel has significantly marked down its time spent on this case. Multiple billing entries are marked as "no charge," and it appears that the firm applied a ten percent discount for several months of work. (See Dkt. No. 90 at ¶ 16; Ex. B.) These discounts more than account for any concerns as to "double billing." (Dkt. No. Dkt. No. 96 at ¶ 10.)

## Conclusion

RJB is hereby ORDERED to pay Mr. Castleberry's attorney's fees in the amount of $293,711.00. The Bill of Costs has been referred to the Deputy in Charge for disposition.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 24, 2018.

Marsha J. Pechman
United States District Judge